IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | Crim. No. 4:23-cr-136-ALM-KPJ-1 |
| | § | |
| OLAMIDE OLATAYO BELLO (1), | § § | |
| Defendant. | § § § | |

## OPINION AND ORDER

On August 10, 2023, Pretrial Services filed a Petition for Action on Conditions of Pretrial Release (Dkt. 122) (the "Petition"). On August 22, 2023, the Court held a hearing on the Petition (Dkt. 122). *See* Dkt. 133. Upon consideration, the Court finds Defendant Olamide Olatayo Bello's ("Defendant") pretrial release should be revoked and Defendant should be **DETAINED** pending trial.

## I.   BACKGROUND

On June 15, 2023, Defendant was charged in an indictment (the "Indictment") (Dkt. 1) with violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud). *See* Dkt. 1. On June 21, 2023, Defendant was arrested; and on June 22, 2023, Defendant was arraigned and made an initial appearance before the undersigned. *See* Minute Entry for June 21, 2023; Minute Entry for June 22, 2023. During the June 22, 2023 arraignment, the Government advised the Court it was not moving to detain Defendant, and Defendant was released on conditions of pretrial release. *See* Minute Entry for June 22, 2023.

On August 10, 2023, Pretrial Services filed the Petition (Dkt. 122). The Petition (Dkt. 122) alleges Defendant violated the following conditions of pretrial release:

1

(1) The defendant must not violate federal, state, or local law while on release.

(7)(g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: co-defendants.

(7)(t) not open any new bank account, credit account, or line of credit. Not access any bank account, credit account, or line of credit held under the name of another individual. Not transfer money in any form, or give money in any form to, any other defendant in the case, whether electronically or by any other means. Not receive money in any form, or give money to, any other defendant in the case, whether electronically or by any other means. Not have contact in any form with any defendant, whether in person, in writing, by phone, messaging app, email, electronically, or by other means.

*Id.* at 2.

The Petition (Dkt. 122) alleges Defendant violated these conditions as follows:

On, or about, June 24, 2023, [Defendant] contacted a co-defendant through a third-party and provided a document that contained information directly pertinent to the case. [Defendant] encouraged the co-defendant not to speak with the government. Additionally, [Defendant] suggested a false narrative for the co-defendant to utilize should they speak with the government.

*Id.*

On August 16, 2023, Defendant was arrested and made an initial appearance as to the Petition (Dkt. 122). *See* Minute Entry for August 16, 2023. On August 22, 2023, the Court held a hearing on the Petition (the "Hearing") (Dkt. 133). Assistant United States Attorney Sean Taylor appeared on behalf of the Government, and Mr. Frank Jackson appeared on behalf of Defendant. *See id.*

Federal Bureau of Investigation Special Agent Jason Rennie ("Agent Rennie") testified as to Defendant's alleged violations of his pretrial release conditions. Agent Rennie testified that Defendant is at the center of a conspiracy with ten co-defendants involving approximately $4 to $5 million of fraudulently obtained pandemic loan relief under the Paycheck Protection Program ("PPP"), a federal business loan program established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Agent Rennie testified that Defendant recruited

individuals known to him in the Nigerian community to request loans through dormant and existing companies and aided these individuals in falsifying and altering these companies' payroll and revenues to receive larger PPP loans from the federal government. Agent Rennie testified that in exchange for Defendant's "assistance," Defendant received approximately twenty-seven to thirty-two percent of the PPP loan proceeds. Agent Rennie testified that through law enforcement's investigation, Defendant was connected with his co-defendants' fraudulent loan applications through his existing relationships with these individuals and his tax preparation services. Agent Rennie further testified that at least two co-defendants only had to provide a copy of their driver's license to Defendant for his preparation of PPP loan applications and that Defendant in turn created false bank statements and altered bank statements to reflect certain payroll and revenues for these individuals' companies to receive outsized PPP loans. Agent Rennie further testified that Defendant has at least one degree and extensive experience with computer sciences and technology, and Defendant has family connections and bank accounts in Nigeria.

Agent Rennie testified that while Defendant and five of the co-defendants were held overnight in Collin County jail before their initial appearance, Defendant repeatedly told the co-defendants that if questioned by law enforcement regarding the PPP loans or the payment of approximately thirty percent to Defendant, they should state, "I don't remember." Agent Rennie testified that Defendant repeatedly told the co-defendants not to cooperate with law enforcement and, as a result, Collin County jail personnel ultimately separated Defendant from the co-defendants.

Additionally, Agent Rennie testified that co-defendant Sabur Olawale Yusuff ("Co-Defendant Yusuff") informed law enforcement that he received WhatsApp text messages from two phone numbers—+234 706 376 2770 and +234 901 935 1185—both of which were unknown

to him.[1] Agent Rennie testified these messages were sent approximately two days following Defendant's release on pretrial conditions. Agent Rennie further testified that +234 is the country code for Nigeria and provided a PowerPoint presentation with screenshots of the WhatsApp text messages from these two numbers. In relevant part, the individual using the number +234 706 376 2770 ("2770 Messenger") had the following WhatsApp text message conversation with Co-Defendant Yusuff:[2]

> 2770 Messenger: Please hold on sir.
>
> Remember "Mr. Ahmed, Baba ori, Abibat, remember I.T Training, AWS Training"
>
> These are clues I was asked to give you sir. I asuure you I am not trying to scam you sir
>
> I am only being asked to send an information to you sir
>
> Remember "Moji alamala"
>
> Just make sure say you delete all the messages from this number when you remember
>
> Co-Defendant Yusuff: Which messages?
>
> And pls don't call me again if you can text me ..
>
> You can easily text
>
> Text me..I can't receive calls at this time.
>
> 2770 Messenger: Alright I apologize for calling at this hour sir, but as I said earlier I'm in Nigeria.
>
> I'm told that the files I'm to give is quite sensitive and that's why it needs to go through madam Moji to you, not directly from me sir, if not I would have just sent it directly right now.

---

[1] WhatsApp is an internationally available cell phone messaging system that provides for end-to-end encryption of messages and calls.

[2] All grammatical and spelling errors are within the WhatsApp text messages and Microsoft Word document.

> The person is trying to stay anonymous and that's why they are giving you these clues sir.
>
> This is why I need madam Moji's contact so I can send it to her and she can give you sir.
>
> I understand why you don't trust me, but I am not trying to scam you of anything this is all just to be safe

Dkt. 133.

Agent Rennie testified that the "clues" referenced in the WhatsApp text messages are to indicate that the messages originate from Defendant, as Defendant previously provided I.T. training and Amazon Web Services ("AWS") training to several co-defendants. Agent Rennie testified that a forensic review of the WhatsApp text messages revealed Defendant communicated with the 2770 Messenger around the time of the WhatsApp text messages, and the 2770 Messenger was identified in a group chat with other co-defendants.

Agent Rennie further testified that the individual using the +234 901 935 1185 ("1185 Messenger") sent Co-Defendant Yusuff a Microsoft Word document (the "Word Document"), which states in relevant part:

> Greetings,
>
> I am aware of your case, and I can see the government want to use you all against each other and that is why they insist you all can not talk to each other. It is time not to be selfish but show loyalty to each other, prove the system wrong that you are one Nigerian and you do not bite each other and be strong.
>
> Here are the facts:
>
> 1.  You are all Nigerians.
>
> 2.  You are all gunnie pigs
>
> 3.  The lawyers will take your money and you still going to be punished.
>
> 4.  You Nigerians are known not to work with each other.

5

5.  You can either beat the system or system beat you

6.  You are all stupid not trusting each other.

7.  You are all scared.

8.  FBI will try to cut deal with each of you to go against [Defendant] who has been there for you all.

9.  [Defendant] is the target and FBI is using you all as a weapon to prison him.

10. One of you snitched on the rest of you because you cut a deal with FBI

11. You are all picked because one way or the other [Defendant] had money transactions with you all and you were all traced by [Defendant's] bank account and his house IP. Also because you all have been found going to [Defendant's] house or have been hanging around him.

One facts you all :

1.  A consultant can help you apply for the PPP as [Defendant] has been your tax and business consultant . . .

2.  PPP loans can be sent on operating expenses such as invoicing and accounting software which can constitute to payroll expenses. So whatever you pay [Defendant] can be consider as payroll expenses toward operation expenses and software for accounting and payroll . . .

SOY the FBI tracked your bank accounts, they know about your purchases.

Suggestions: The FBI claimed 30% you can claim it as a subscription to the payroll services at payroll.dob.company to also include accounting services. Also show the attached documents to help with the information you need on your application. You can also claim the fact that you have been disallowed to contact your consultant [Defendant] to gather more documents as it has been long, and you cannot remember it all. Also, the server in [Defendant's] house you use to store your records was hacked 3 months ago and [Defendant] has been working on extracting the data before the arrest. The attached record is for your information to guide you to prepare for this and not to show anyone

Dkt. 133.

Agent Rennie testified that "SOY" is a reference to one of the companies involved in the

Indictment that received PPP loans, and payroll.dob.company is a company owned by Defendant.

6

Agent Rennie testified that the Word Document properties reflect Defendant was the "Author" of the Word Document and that Defendant was the last individual to modify the Word Document on June 24, 2023. Agent Rennie testified that law enforcement also identified telephone communications between Defendant and 1185 Messenger. Agent Rennie testified that at least two co-defendants received the Word Document and another very similar word document. Agent Rennie testified that he believes the Word Document was created to warn the co-defendants not to speak with law enforcement and, in the event they did, create a false narrative the co-defendants should present to law enforcement. Agent Rennie further testified there was additional evidence that Defendant spoke with a co-defendant and informed the co-defendant that individuals expecting a share of the PPP loan proceeds were threatening possible violence.

On cross-examination, Agent Rennie clarified that the above communications were sent directly to Co-Defendant Yusuff, who then provided the communications to the FBI.

## II.   LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. Section 3142(g) provides that courts shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (per curiam).

"A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Section 3148(b) provides:

> The Judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
>
> (1) finds that there is—
>
>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>   (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). "Under the statute, a finding of probable cause under § 3148(b)(1)(A) carries with it a rebuttable presumption that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *see also United States v. Moreno*, 857 F.3d 723, 725–27 (5th Cir. 2017). Under Section 3148(b)(2)(B), a "district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *Aron*, 904 F.2d at 224 (citing *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986)); *see also United States v. Minor*, 204 F. App'x 453, 455 (5th Cir. 2006).

8

### III.  ANALYSIS

The Court finds there is probable cause to believe Defendant has committed a federal, state, or local crime, in violation of Condition 1, by attempting to obstruct justice, and there is clear and convincing evidence that Defendant violated Conditions 7(g) and 7(t). The Court further finds Defendant has not rebutted the presumption that no condition or combination of conditions will assure that he will not flee. Furthermore, the Court finds by a preponderance of the evidence that Defendant will not abide by any condition or combination of conditions of release.

On June 22, 2023, Defendant made an initial appearance and was arraigned, the Court read the conditions of pretrial release into the record, Defendant reviewed the conditions with his attorney and was provided a copy of the pretrial conditions, and Defendant signed the order, which states as follows: "I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release . . . I am aware of the penalties and sanctions set forth above." Dkt. 46 at 4; Minute Entry for June 22, 2023. The Court confirmed with Defendant that he understood each of the conditions set forth in the order and warned Defendant of the consequences for failure to abide by the pretrial conditions stating, "If you violate any condition of your release, a warrant for your arrest may be issued, you may be jailed until trial, and you may be prosecuted for contempt of court. Committing a crime while on release may lead to more severe punishment than you would otherwise receive if you committed that same crime at any other time. And it is a crime to try to influence, threaten, retaliate against, or in any way affect any person associated with your case." Minute Entry for June 22, 2023. After Defendant confirmed that he understood his conditions of pretrial release, agreed to abide by them, and confirmed his understanding of the consequences for failure to abide by his conditions, Defendant was released on conditions of pretrial release.

9

A mere two days later, Defendant, through intermediaries, sought to coerce Co-Defendant Yusuff to not speak with the FBI or, in the alternative, for Co-Defendant Yusuff to present a false narrative to the FBI to aid Defendant. However, Defendant's attempt to anonymize his communications was defeated by his failure to remove the Word Document properties—i.e., metadata reflecting the author of the document and date the document was created or modified— that denote Defendant's name and the date he created and modified the Word Document.[3] Furthermore, Agent Rennie's testimony and investigation reveal telephone communications between 1185 Messenger and Defendant. Defendant's intent to use intermediaries to coerce Co-Defendant Yusuff is further bolstered by 2770 Messenger's "clues" to Co-Defendant Yusuff, such as the I.T. and AWS training, included to inform Co-Defendant Yusuff that Defendant was the source of these messages. And the nefarious nature of these messages is further made clear by the instruction to delete them after Co-Defendant Yusuff viewed them.

Defendant's actions are a clear message that he has attempted and intends to obstruct justice. The Court is not blind to such actions. Conspiracy, by its very nature, presents a prisoner's dilemma between co-defendants, and there is a threat that a co-defendant may seek to coerce, threaten, or even injure co-defendants. But our criminal justice system depends on witnesses and defendants being free from fear or coercion to provide truthful testimony as to the events that occurred and their respective involvement or lack thereof. In the present case, Defendant is accused of leading a conspiracy to direct others to defraud the COVID-19 pandemic relief program. Once arrested, Defendant sought to coerce his fellow co-defendants into providing a false narrative against the express direction from the Court not to communicate electronically or through any

---

[3] Microsoft Word provides a consumer-facing function for users to view the properties of documents, with different fields that may be added or deleted by the user, including who authored and altered the document.

other means with co-defendants. Defendant was afforded an opportunity to continue on conditions of pretrial release; however, through his actions, he has now forfeited his pretrial release.

Accordingly, the Court finds there is probable cause to believe Defendant has committed a federal, state, or local crime in violation of Condition 1, by attempting to obstruct justice, and there is clear and convincing evidence that Defendant violated Conditions 7(g) and 7(t). The Court further finds Defendant has not rebutted the presumption that no condition or combination of conditions will assure that he will not flee. Finally, the Court finds by a preponderance of the evidence that Defendant will not abide by any condition or combination of conditions of release.

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that the record in this case supports Defendant's pretrial detention. Accordingly, Defendant shall remain **DETAINED** pending trial or other disposition of this case.

**So ORDERED and SIGNED this 25th day of August, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE